IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| IN THE MATTER OF EXTRADITION ) | |
| ) | |
| ) | |
| OF ) | Civil Action No.: 7:12 MC39 |
| ) | |
| ALMAZ NEZIROVIC ) | |
| ) | |
| ) | By: Hon. Robert S. Ballou |
| ) | United States Magistrate Judge |

**MEMORANDUM AND ORDER**

In this international extradition proceeding, I deny the extraditee's renewed request for bond.

**I. PROCEDURAL BACKGROUND**

On July 16, 2012 the United States Government ("Government") initiated extradition proceedings pursuant to 18 U.S.C. § 3184 against Almaz Neziorvic ("Nezirovic") on behalf of the Government of Bosnia and Herzegovina ("Bosnia"). The Government seeks an extradition certificate on behalf of Bosnia under the treaty between the United States of America and the Kingdom of Servia (Serbia, as otherwise transliterated) for the Mutual Extradition of Fugitives from Justice, signed at Belgrade October 25, 1901 and entered into force June 12, 1902 ("Treaty"). The Government represents that Neziorvic has been charged by Bosnia with war crimes against civilians, including torture and inhuman treatment. Nezirovic's original bond request was denied by this Court's July 23, 2012 order granting the Government's motion for detention. On September 9, 2012, Nezirovic renewed his request for bond. The Court held an evidentiary hearing on the bond request on October 10, 2012. Nezirovic argued at the evidentiary hearing that he suffers from post-traumatic stress syndrome, that he is not getting

1

adequate treatment for this condition while detained, and that the length of the extradition proceedings constitute special circumstances supporting a grant of bond.

## II. RELEVANT LAW

### A. The Treaty Does Not Preclude A Bond Consideration.

The Government asserts that Article IV of the Treaty requires the provisional detention of Nezirovic during the Court's consideration of extradition. Article IV of the Treaty states, in relevant part, as follows:

> Where the arrest and detention of a fugitive in the United States are desired on telegraphic or other information in advance of the presentation of formal proofs, complaint on oath, as provided by the statutes of the United States, shall be made by an agent of the Government of Servia before a judge or other magistrate authorized to issue warrants of arrest in extradition cases.
>
> ….
>
> The provisional detention of a fugitive shall cease and the prisoner be released if a formal requisition for his surrender, accompanied by the necessary evidence of criminality, has not been produced under the stipulations of this Treaty, within two months from the date of his provisional arrest and detention.

Id. The Government contends that the failure to file specific information in support of extradition within two months of arrest is the sole circumstance under the Treaty allowing for the release of an extraditee. This release under the Treaty is absolute. The judicial officer has no discretion in the matter; there are no conditions of release imposed. Release under Article IV does not contemplate future court proceedings and is not provisional. Thus an Article IV release is neither bail nor an analogous form of release from detention. Bond and Article IV release are distinct questions. In fact, the Treaty does not expressly exclude the release of an extraditee on bond, and the Court will not read the Treaty so narrowly as to eliminate a possible bond consideration where otherwise permissible.

B.  Special Circumstances Are Required For Bond.

An international extradition proceeding is not a criminal case and therefore the Bail Reform Act, 18 U.S.C. § 3141 et. seq., does not apply.  See e.g., United States v. Wroclawski, 574 F. Supp. 2d 1040, 1044 (D. Ariz. 2008) (internal citations omitted); In re Extradition of Mironescu, 296 F. Supp. 2d 632, 634 (M.D.N.C. 2003) (citing Karmin v. United States, 725 F.2d 1225, 1227-28 (9th Cir. 1984)).  The sui generis nature of extradition proceedings, Snider v. Seung Lee, 584 F.3d 193, 203 n.2 (4th Cir. 2009), along with a lack of statutory guidance, has made determining bond in such cases a difficult task for federal courts.  Cf. 18 U.S.C. § 3142 (providing such guidance in domestic criminal cases); see also In re Extradition of Garcia, 761 F. Supp. 2d 468, 470 (S.D. Tex. 2010) (making the same comparison).  A federal common law has, by necessity, developed the guiding principles and legal standards governing bail determinations in extradition cases.  See Garcia, 761 F. Supp. 2d at 470 ("Federal district courts have almost exclusively, and by necessity, developed a federal common law to fill in the gaps left by current legislation for bail determinations in foreign extradition cases."); In re Extradition of Gonzalez, 52 F. Supp. 2d 725, 735 (W.D. La. 1999) ("The legal standards which govern release or detention of an extraditee are governed by federal case law." (citing In re Extradition of Maniero, 950 F. Supp. 290, 293 (S.D. Cal. 1996.))).

The seminal case on bond during extradition proceedings is Wright v. Henkel, 190 U.S. 40 (1903), in which the Supreme Court stated that it was "unwilling to hold that [courts] possess no power in respect of admitting to bail other than as specifically vested by statute, or that, while bail should not ordinarily be granted in cases of foreign extradition, [] courts may not in any case, and whatever the special circumstances, extend that relief."  Id. at 63; see also In re Mitchell, 171 F. 289 (S.D.N.Y. 1909) (Hand, J.) ("[T]he existence of the power [to grant bail in

3

extradition cases] was distinctly affirmed by the Supreme Court. The [C]ourt at the same time clearly indicates its judgment that the power should be exercised only in the most pressing circumstances, and when the requirements of justice are absolutely peremptory . . . ."). Since then, subsequent "[c]ase[]law has clearly established that bail may be granted under 'special circumstances.'" Matter of Extradition of Nacif-Borge, 829 F. Supp. 1210, 1213-14 (D. Nev. 1993) (collecting cases); see also Garcia, 761 F. Supp. 2d at 470 (observing that the special circumstances test has become the standard for rendering bail decisions in extradition cases (citing In re Extradition of Russell, 805 F.2d 1215, 1216 (5th Cir. 1986))). This Court, therefore, has the authority to grant bail—but only if special circumstances exist.

While federal common law has evolved to allow bond only where special circumstances exist, the precise meaning of that term is not well defined. Garcia, 761 F. Supp. 2d at 471 ("'Special circumstances' have never been specifically defined, but have only been described in the abstract, leaving trial courts with little to no guidance."); Maniero, 950 F. Supp. at 294 ("The term 'special circumstances' has never been precisely defined"); Nacif-Borge, 829 F. Supp. at 1213-14 (noting case law has not provide a clear explanation of the precise meaning of special circumstances). Indeed, one court went so far as to call the decisions on bond in extradition cases "contradictory and irreconcilable." Garcia, 761 F. Supp. 2d at 471. However, while the precise contours may not be defined, some aspects of the special circumstances test are clear.

The prevailing authority establishes a presumption against bond. The Supreme Court in Wright cautioned that "bail should not ordinarily be granted in cases of foreign extradition." Wright, 190 U.S. at 63. Subsequent cases have read Wright as establishing a presumption against bond. See e.g., Beaulieu v. Hartigan, 554 F.2d 1, 1 (1st Cir. 1977) ("Unlike the situation for domestic crimes, there is no presumption favoring bail. The reverse is rather the case."); In

4

the Matter of the Extradition of Sutton, 898 F. Supp. 691, 694 (E.D. Mo. 1995) ("There is a strong presumption against bail in international extradition proceedings."). The special circumstances test has evolved to require a showing of extraordinary circumstances, i.e. factors which are not applicable to all defendants facing extradition, Garcia, 761 F. Supp. 2d at 472 (citing Gonzalez, 52 F. Supp. 2d at 735); see also Nacif-Borge, 829 F. Supp. at 1216 (citing In re Extradition of Smyth, 976 F.2d 1535, 1535-36 (9th Cir.1992)), and special circumstances are, by definition, rare. United States v. Ramnath, 533 F. Supp. 2d 662, 666 (E.D. Tex. 2008).

The Ninth Circuit recognized in Salerno v. United States, 878 F.2d 317 (9th Cir. 1989) that special circumstances may exist where the extraditee (1) raises substantial claims on which he has a high probability of success, (2) suffers a serious deterioration of health while incarcerated, and (3) shows an unusual delay in the appeal process. Moreover, a combination of factors may collectively establish special circumstances warranting bail in extradition proceedings. Nacif-Borge, 829 F. Supp. at 1216. The decision regarding bail in an extradition case is one "necessarily made on a case-by-case basis." Garcia, 761 F. Supp. 2d at 472.; see also Gonzalez, 52 F. Supp. 2d at 736 ("The decision to grant bail and, consequently, the determination of what constitutes a special circumstance, is left to the sound discretion of the trial judge."); cf. United States v. Williams, 611 F.2d 914, 915 (1st Cir. 1979) (per curiam) (demonstrating the individualized nature of bond determinations by holding that the release of one brother on bail was not a special circumstance as to the other, even though both brothers were facing extradition on the same charge).

Thus, the proper inquiry for this Court is whether Neziorvic's individual circumstances are sufficiently compelling and unique to constitute special circumstances and to overcome the presumption against bond.

C.  No Risk Of Flight Is Required For Bond.

Flight risk is a distinct question from whether special circumstances exist.  The "evaluation of flight risk remains a separate and independent consideration . . . ."  Nacif-Borge, 829 F. Supp. at 1221; see also  Garcia, 761 F. Supp. 2d at 472 (observing that most courts treat flight risk as a separate, independent factor from the special circumstances analysis).  As a result, the fact that there is no risk of flight, standing alone, does not mean bail is appropriate.  In the Matter of the Extradition of Rovelli, 977 F. Supp. 566, 568 (D. Conn. 1997) (noting that for bond a prospective extraditee must not only demonstrate that he or she is not a flight risk, but also that special circumstances exist); see also Salerno v. United States, 878 F.2d 317, 318 (9th Cir. 1989) (stating that not being a flight risk is not the criteria for release in an extradition case (citing Kamrin v. United States, 725 F.2d 1225, 1228 (9th Cir. 1984))).

"Because the primary concern of the United States is to return the person sought to the requesting country, the court will not grant bail if the person is a risk of flight or danger."  Nacif-Borge, 829 F. Supp. at 1213, 1221.  Indeed, courts have observed that *any* risk of flight is too significant a risk.  Garcia, 761 F. Supp. 2d at 471 (emphasis added) (citing Gonzales, 52 F. Supp. 2d at 735, in turn quoting Nacif Borge, 829 F. Supp. at 1214).  As this Court noted in its Order of Detention, (Dkt. No. 10), the Government has a strong and well recognized interest in seeking to detain persons subject to extradition to ensure that the United States fulfills its international treaty obligations.  See, e.g., Borodin v. Ashcroft, 136 F. Supp. 2d 125, 128 (E.D.N.Y. 2001) (noting the important national interest in successfully fulfilling our obligations under extradition treaties with other countries).  Thus, even if Neziorvic can show special circumstances, he must also show, as an additional and independent matter, that he poses no risk of flight.

D.  Burden Of Proof Is Clear And Convincing Evidence.

Neziorvic bears the burden of showing that special circumstances exist and that he is not a risk of flight. No agreement exists, however, as to the weight of the evidence required to sustain that burden. See Garcia, 761 F. Supp. 2d at 474 (noting general agreement that the potential extraditee bears the burden regarding bond, but disagreement as to the burden of persuasion); Nacif-Borge, 829 F. Supp. at 1213-14 (noting case law has not explained precisely the degree of proof by which an extraditee must demonstrate special circumstances).

The substantial majority of courts to consider the question have required proof of special circumstances by clear and convincing evidence. See e.g., Garcia, 761 F. Supp. 2d at 474-75 (compiling cases that apply a clear and convincing standard, a preponderance of the evidence standard, or do not comment on the burden and electing to apply a clear and convincing evidence standard); In re Extradition of Beresford-Redman, 753 F. Supp. 2d 1078, 1088 (C.D. Cal. 2010) (collecting cases) ("Many courts have required clear and convincing evidence."); Gonzalez, 52 F. Supp. 2d at 735 (applying a clear and convincing evidence standard (citing Nacif–Borge, 829 F. Supp. at 1215)); Ramnath, 533 F. Supp. 2d at 666 (collecting cases that apply a clear and convincing evidence standard and applying a clear and convincing evidence standard); In the Matter of the Extradition of Mainero, 950 F. Supp. 290, 294 (S.D. Cal. 1996) (citing Nacif–Borge, 829 F. Supp. at 1215) (applying a clear and convincing evidence standard).[1] Furthermore, bond in international extraditions is intended to be a rare event. Borodin, 136 F. Supp. 2d at 128 ("Release on bail in extradition cases should be 'an unusual and extraordinary

---

[1] A few courts have found that special circumstances need only be shown by a preponderance of the evidence. See, e.g., Garcia v. Benov, 2009 WL 6498194, at *3 (C.D. Cal. Apr. 13, 2009) (rejecting the analysis behind adopting a clear and convincing evidence standard articulated in Nacif-Borge, 829 F. Supp. at 1214-15 (citing In re Extradition of Santos, 473 F. Supp.2d 1030, 1036 n.4 (C.D. Cal. 2006))). These cases have been characterized as "a negligible minority." Garcia, 761 F. Supp. 2d at 474-75.

thing.'" (citing United States ex rel. McNamara v. Henkel, 46 F.2d 84 (S.D.N.Y. 1912))). Given that bond is to be rare, the heightened burden of clear and convincing evidence is the sounder approach. As to risk of flight, it is even more apparent that the clear and convincing evidence standard should apply. In an international extradition matter, "our nation has important interests in (1) fulfilling its legal and binding obligations under its treaties with foreign governments, (2) avoiding any international embarrassment if our country were unable to fulfill those obligations, and (3) preventing any circumstances that would lead to potential reciprocal noncompliance by foreign governments." Garcia, 761 F. Supp. 2d at 475 (citing Wright, 190 U.S. at 62; Ramnath, 533 F. Supp. 2d at 665). The release of an international fugitive who then successfully fled could seriously mar the reputation of the United States. Even assuming the fugitive was captured after fleeing, "the regaining of the custody of the accused obviously would be surrounded with serious embarrassment." Wright, 190 U.S. at 62. Moreover, as the Government notes, any forfeiture of bail by an absconding fugitive would leave the requesting country "with neither compensation nor remedy." (Dkt. No. 31 at 15.) As the Supreme Court has put it, "[t]he enforcement of the bond, if forfeited, would hardly meet the international demand." Wright, 190 U.S. at 62. The Court finds, based upon these considerations, that Neziorvic must show that he poses no risk of flight by clear and convincing evidence.

### III. ANALYSIS

Because special circumstances are necessary, even absence a risk of flight, in order for a court to grant bond in an international extradition case, this Court will first determine if such special circumstances exist before undertaking any risk of flight analysis. United States v. Leitner, 784 F.2d 159, 161 (2d Cir. 1986) (finding that even a low risk of flight would not be dispositive); Nacif-Borge, 829 F. Supp. at 1215-16 ("Given that special circumstances are

absolutely required for bail, and that risk of flight is not determinative, the best approach first explores special circumstances, and then, only after a finding of special circumstances, examines risk of flight.").

    A.  <u>Neziorvic's Medical Condition Is Not A Special Circumstance</u>.

A serious medical condition may constitute a special circumstance. <u>Salerno</u>, 878 F.2d at 317 (collecting cases) (noting that examples of special circumstances include a serious deterioration of health while incarcerated); <u>see also</u> <u>In the Matter of the Extradition of Hamilton-Byrne</u>, 831 F. Supp. 287, 290-91 (S.D.N.Y. 1993) (citations omitted) ("Special circumstances might also be found if a health emergency could be established which could only be treated while a detainee was on bail."). Neziorvic maintains that detention has aggravated his post-traumatic stress disorder, that he is not receiving counseling from his regular care givers, and that the regional jail does not provide adequate treatment for his condition. More specifically, Neziorvic contends that the counseling services available to him at the Western Virginia Regional Jail—the facility in which he is currently being held—are inadequate to address his severe post-traumatic stress syndrome ("PTSD"). Neziorvic pointed to the grave concerns of his treating psychologist, Dr. Katz, regarding the impact of prolonged detention on his overall mental health. Additionally, Allen Neziorvic, the son of Almaz Neziorvic, testified that his father's mental health had worsened since being incarcerated. Neziorvic further argued that treatment for PTSD requires specialization and is not a mental health issue that "just any" psychiatrist could address. Nezirovic presented no medical evidence that the conditions of detention are making his PTSD worse or that the regional jail cannot adequately address his mental health or physical needs.

The record shows that the jail where Nezirovic is presently being held has adequate mental health services available to Neziorvic. The Jail Superintendent testified that the jail has a comprehensive health care staff, including a mental health staff with mental health counselors trained in handling PTSD available to inmates every day, and a licensed psychiatrist available twice a week. The jail charges a nominal fee of ten dollars ($10) to see the psychiatrist after an inmate has been in the jail thirty (30) days. There is no fee to see the mental health counselors. Additionally, the Superintendent testified that, subject to the approval of the U.S. Marshals Service, the jail could arrangement for treatment by an outside specialist; such visits could be as numerous as medically necessary and would not count against the mental health treatment in the jail made available to the inmates.

Neziorvic has received all of his prescribed medication, and the Superintendent testified that the jail would not withhold any medication because an inmate could not meet the small co-pay/handling fee of $5.00 per prescription refill.[2] There was no evidence that Neziorvic had requested mental health counseling from the jail through either the mental health counselors or the psychiatrist. In fact, the only medical evidence offered showed that Nezirovic had undergone a routine mental health screening upon arrival at the jail with no request for follow up treatment or counseling. Cf. Nacif-Borge, 829 F. Supp. at 1217 ("Nacif also argued that he needs a specialized diet not available at the detention center. Yet Nacif has not taken any steps while incarcerated to obtain this specialized diet."). The only evidence offered as to Neziorvic's condition came through his son's testimony that he was unaware the jail offered mental health treatment. While it is understandable that Neziorvic and his family do not have an inherent knowledge of what the jail offers, it is difficult for Neziorvic to successfully assert that the

---

[2] The Superintendent testified that after thirty (30) days incarceration, prisoners are charged a five dollar ($5) handling fee per refill for each prescription.

mental health treatment available at the jail is insufficient when there is no evidence to show he has, as of yet, availed himself of it.

Additionally, while this Court has no reason to doubt the testimony of his son, Neziorvic must show documented medical evidence from a physician of his deteriorating health in order to meet the clear and convincing evidence standard. Nacif-Borge, 829 F. Supp. at 1217 (noting that evidence, *including* documented medical evidence from a physician, would be required for a showing by clear and convincing evidence that the severity of a medical condition was a special circumstance) (emphasis added). Neziorvic did provide letters from four different doctors. These letters show that Nezirovic suffers from PTSD and that he received treatment prior to his detention from both a psychiatrist and neuro-psychologist. The evidence offered, however, does not show that the jail cannot adequately treat Nezirovic. Dr. Katz notes his grave concerns for Nezirovic's well-being, but states that he "would therefore urge the court to allow Mr. Neziorvic to continue to receive psychological treatment as well as ongoing medication management while he is being detained and possibly to consider his release to house arrest so that he can continue to receive these services in his home community." Thus, while Dr. Katz hints that release might have some benefit for Neziorvic's treatment, he does in any way not indicate that it is essential.

At end, this case is materially indistinguishable from Garcia, 761 F. Supp. 2d 468, which found that:

> In this matter, [the extraditee] has not provided sufficient detail regarding his condition or his medical treatment needs to convince the Court that the severity of his condition is a special circumstance warranting release on bond. That is, the exhibits provided by [the extraditee] do not sufficiently explain to the Court that his condition is either life-threatening or so serious that his medical needs cannot be accommodated by the United States Marshal's Service while in custody. His exhibits simply support his assertions that he has received medical treatment and has been referred to specialists by other physicians. As such, while the Court does not question the seriousness of [the extraditee]'s medical conditions, they do

>       not appear to be life-threatening, or so complex as to be beyond the capacity of
>       federal authorities to manage while he is in their custody.[3]

Id. at 481-82 (internal citation omitted).

    B. <u>There Is No Evidence Of Undue Delay</u>.

The Ninth Circuit has recognized that unusual delay in the appeal process can give rise to a special circumstance. <u>Matter of Requested Extradition of Kirby</u>, 106 F.3d 855, 863 (9th Cir. 1996) (citing <u>Salerno</u>, 878 F.2d at 317). This Court, however, has been presented no evidence showing that there will be *undue* delay either in this proceeding, or in any hypothetical future habeas proceeding.[4] Every extradition proceeding will inevitably result in some delay. To constitute special circumstances the delay must be out of the ordinary. <u>United States v. Kin-Hong</u>, 83 F.3d 523, 525 (1st Cir. 1996) (["W]e do not believe that the normal passage of time inherent in the litigation process constitutes a 'special circumstance.'"). This proceeding has not met any undue delay thus far. The initial appearance was July 17, 2012. An evidentiary hearing was held September 7. A bond hearing was held October 10. The Court has heard all evidence and received final briefings on the merits. Nothing currently indicates any delay beyond the time necessary for the parties to marshal evidence for the evidentiary hearing and to present legal memoranda and argument to the court.

It is true that there are complex legal issues in this case. It is not, however, the case that special circumstances exist whenever complex legal issues arise in an extradition hearing. <u>Cf.</u> <u>Matter of Extradition of Lui</u>, 913 F. Supp. 50, 54 (D. Mass. 1996) ("[First Circuit precedent does not] stand[] for the sweeping proposition that bail is warranted whenever the existence of

---

[3] Neziorvic is currently incarcerated at a state facility under a contract with the federal government; this is not a material difference.
[4] There is no direct appeal from an extradition proceeding.

complex legal issues threatens to prolong the extradition process."). Special circumstances must be ones which are rare. Complex legal issues in an extradition hearing are not.

      C. There Is No Substantial Likelihood Of Success On The Merits.

Courts have generally acknowledged that special circumstances may exist where the moving party has shown a substantially likelihood of success on the merits. See e.g., Mironescu, 296 F. Supp. 2d at 634 (citing Gonzalez, 52 F. Supp. 2d at 736); Maniero, 950 F. Supp. at 294 (citing Salerno, 878 F.2d at 317). This is not a case where probable cause is clearly lacking. Compare Gonzalez, 52 F. Supp. 2d at 741 (finding special circumstances because the probable cause evidence lacked any indicia of reliability), with Mironescu, 296 F. Supp. 2d at 634 (finding that evidence presented at the bail hearing did not sufficiently demonstrate the absence of probable cause as to warrant special circumstances). Indeed, at least in Neziorvic's initial briefing on the merits, he has not contested probable cause. (Dkt. No. 19 at 10-11) ("For purposes of this Motion only, Nezirovic does not contest probable cause . . . ."). As to the other issues going to the merits, while this Court will not pre-judge the case, it cannot be said at this time clear and convincing evidence establishes a substantially likelihood that Nezirovic will succeed on the merits.

      D. No Combination of Factors Establish A Special Circumstance.

Neziorvic argues that, even if none of these factors in isolation constitute special circumstances, they collectively show special circumstances sufficient to warrant bond. Courts have explicitly recognized that a combination of factors, in aggregate, may sometimes give rise to special circumstances. See In re Extradition of Huerta, 2008 WL 2557514, at *1 (S.D. Tex. June 23, 2008); Ramnath, 533 F. Supp. 2d at 666; Rovelli, 977 F. Supp. at 567. However, Neziorvic has put on no evidence, and this Court can think of no reason, as to why the factors

presented in this case would be more convincing when viewed in aggregate rather than individually.

  E. <u>Neziorvic Has Not Shown No Risk of Flight</u>.

  Because there has been no showing by Neziorvic of special circumstances by clear and convincing evidence, bond should be denied. However, even assuming special circumstances, Neziorvic would be required to show he posed no risk of flight by clear and convincing evidence. Neziorvic notes that, before being arrest on this matter, he was on supervised release for over a year on criminal immigration charges and that during that time he was completely compliant.[5] He further notes that he would have been subject to deportation if convicted. Nevertheless, the simple fact remains that an extradition request for war crimes is an entirely different matter from an immigration offense. The fact that Neziorvic made bond and performed well on bond in a domestic criminal case does not, without more, carry the heavy burden of clear and convincing evidence. It does not go far enough to clearly show the Court that there is no risk of flight in the face of *extradition*. <u>Cf.</u> <u>Garcia</u>, 761 F. Supp. 2d at 480 (finding there was little, if any, reason to flee or disappear before the provisional arrest warranted was filed in an extradition case (citing <u>Russell</u>, 647 F. Supp. at 1049–50)). This is particularly true in light of the seriousness of the underlying offense alleged by Bosnia.

---

[5] Nezirovic has been charged with violation of 18 U.S.C. § 1546(a) (unlawful possession of an immigration document) and 18 U.S.C. § 1425(a) (unlawful application for naturalization).

## III. CONCLUSION

None of the factors put forward by Neziorvic, in isolation or in aggregate, are so unique and compelling as to demonstrate special circumstances by clear and convincing evidence. Lacking such special circumstances in an international extradition case, there can be no bond. The motion is therefore **DENIED**.

Entered: November 19, 2012

*/s/ Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge